FILED IN OPEN COURT

9.16.2025

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:25-cr-73-HES-SJH

BRADEN HUSTON HOBBS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, Braden Huston Hobbs, and the attorney for the defendant, James Hill, Esq., mutually agree as follows:

### A.    Particularized Terms

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One, Four, and Five of the Indictment. Count One charges the defendant with firearms trafficking conspiracy, in violation of 18 U.S.C. § 933(a)(3). Count Four charges the defendant with making a materially false statement to a firearms dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Count Five charges the defendant with conspiring to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount

Defendant's Initials ___BH___                    AF's Initials _KL for NMA_

of cocaine, and a mixture and substance containing a detectable amount of Adderall, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii).

2.     Minimum and Maximum Penalties

Count One is punishable by a term of imprisonment of not more than 15 years, a fine of up to $250,000, or both imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100 due on the date of sentencing. A violation of the terms and conditions of supervised released is punishable by not more than two years additional imprisonment and an additional term of supervised release.

Count Four is punishable by a term of imprisonment of not more than 10 years, a fine of up to $250,000, or both imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100 due on the date of sentencing. A violation of the terms and conditions of supervised released is punishable by not more than two years additional imprisonment and an additional term of supervised release.

Count Five is punishable by a mandatory minimum term of imprisonment of five years and a maximum of 40 years imprisonment, a fine of up to $5,000,000, or both imprisonment and a fine, a term of supervised release of at least four years and up to life, and a special assessment of $100, said special assessment to be due on the date of sentencing. A violation of the terms and

Defendant's Initials _RH_                    2

conditions of supervised released is punishable by not more than three years additional imprisonment and an additional term of supervised release.

The total cumulative penalties for Counts One, Four, and Five, are a minimum mandatory term of five years' imprisonment and up to 65 years imprisonment, a maximum fine of up to $5,500,000, or both imprisonment and a fine, a term of supervised release of at least four years and up to life, and a special assessment of $300 due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by up to seven years additional imprisonment and an additional term of supervised release.

3.    *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of five years' imprisonment and a maximum sentence of 40 years' imprisonment as to Count Five because the following facts have been admitted by the defendant and are established by this plea of guilty:

The conspiracy involved 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance.

Defendant's Initials _____                3

4.      Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

| | | |
|---|---|---|
| First: | Two or more people attempted or conspired to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person; |
| Second: | the defendant knew or had reasonable cause to believe, the use, carrying, or possession of a firearm by the recipient would constitute a felony; and |
| Third: | the shipping, transporting, transferring, or disposing of the firearm was in or affecting interstate or foreign commerce. |

The elements of Count Four are:

| | | |
|---|---|---|
| First: | The Defendant bought or tried to buy a firearm from a federally licensed firearms dealer; |
| Second: | the Defendant knowingly made a false or fictitious statement, orally or in writing that was intended to deceive or likely to deceive the dealer; and |
| Third: | the subject matter of the false statement was material to the lawfulness of the sale. |

The elements of Count Five are:

| | | |
|---|---|---|
| First: | two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute |

Defendant's Initials _RH_                          4

and possess with the intent to distribute controlled substances;

Second:  the defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third:  the object of the unlawful plan was to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, and a mixture and substance containing Adderall, a Schedule II controlled substance.

5.    Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Counts Two, Three, and Six, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _____        5

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession

Defendant's Initials _____     6

or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _RH_                    7

8.     Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9.     Cooperation - Responsibilities of Parties

a.     The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest

Defendant's Initials _____                8

knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any

Defendant's Initials _B#_                    9

felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)　　The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)　　The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)　　The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _BH_                    10

10.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 924(d) and 934, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.    The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.    In the event the forfeiture is omitted from the judgment, the

Defendant's Initials _BH_                    11

defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information

Defendant's Initials _BH_                    12

about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

Defendant's Initials _BH_                    13

B.    **Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $300, payable

Defendant's Initials _BH_                14

to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to

Defendant's Initials _BH_                15

make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any

Defendant's Initials ___BGA___        16

assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's

Defendant's Initials _____    17

sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring

Defendant's Initials _BA_                    18

defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.    The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).    The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine

Defendant's Initials _____    19

the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _____    20

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _16th_ day of ~~July~~ September 2025.

GREGORY W. KEHOE
United States Attorney

_____
BRADEN HUSTON HOBBS
Defendant

_____
ELISIBETH ADAMS
Assistant United States Attorney

_____
JAMES HILL, ESQ.
Attorney for Defendant

_____
FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville

Defendant's Initials _____        21

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:25-cr-73-HES-SJH

BRADEN HUSTON HOBBS

PERSONALIZATION OF ELEMENTS

**Count One:**

1.      Do you admit that beginning on an unknown date, but no later than in or about March 2022, and continuing through in or about June 2024, in the Middle District of Florida, and elsewhere, you and at least one other person in some way agreed to try to accomplish a shared and unlawful plan to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person?

2.      Did you know or have reasonable cause to believe, the use, carrying, or possession of a firearm by the recipient would constitute a felony?

3.      Do you admit that there were firearms shipped, transported, transferred, or disposed of that affected interstate and foreign commerce, that is, firearms purchased from an online distributer and shipped from Kentucky to Jacksonville Beach, Florida, as well as, including but not limited to, a Glock

Defendant's Initials _BHH_

pistol manufactured in Austria, a Century Arms pistol manufactured in Vermont, a Diamondback Arms pistol sold in Indiana, and a Ruger pistol manufactured in Arizona?

**Count Four:**

1.    Do you admit that on or about ~~February 23, 2024~~ April 17, 2024, you bought or tried to by a firearm from a federally licensed firearms dealer?

2.    Do you admit that you knowingly made a false or fictious statement, orally or in writing, that was intended to deceive or likely to deceive the dealer?

3.    Do you admit that the subject matter of the false statement was material to the lawfulness of the sale?

**Count Five:**

1.    Do you admit that beginning on an unknown date, but no later than in or about March 2022, and continuing through in or about June 2024, in the Middle District of Florida, and elsewhere, you and at least one other person in some way agreed to try to accomplish a shared and unlawful plan to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing cocaine and a mixture and substance containing Adderall, both Schedule II controlled substances?

Defendant's Initials _BH_                2

2.    Did you know the unlawful purpose of the plan and willfully join in it?

3.    Do you admit that the object of the unlawful plan was to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing cocaine?

Defendant's Initials _B&_                    3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                            CASE NO. 3:25-cr-73-HES-SJH

BRADEN HUSTON HOBBS

FACTUAL BASIS

Counts One and Four:

In June 2024, Special Agents (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an investigation into Braden Huston Hobbs, the defendant, after reviewing reports from the St. Johns County Sheriff's Office for an unrelated criminal investigation involving the illegal possession of drugs and firearms. An ATF SA noted that an American Tactical Imports .223 pistol was recovered during the unrelated criminal investigation and was in the possession of a convicted felon. An ATF e-trace showed that the pistol was purchased by the defendant approximately 42 days prior to its recovery. Through a further review of records, the ATF SA determined that another firearm purchased by the defendant was recovered by the Jacksonville Sheriff's Office (JSO) during an unrelated search warrant execution in March 2023. Additionally, at least three firearms purchased by the defendant were

Defendant's Initials _BH_

recovered by JSO during the execution of another unrelated search warrant of a residence that was being used to traffic illegal drugs in August 2023.

Further, in June 2024, agents with the Florida Department of Law Enforcement (FDLE) identified co-conspirator Alton Wayne Cope III as a possible dealer of firearms. Accordingly, FDLE began an investigation into Cope III. ATF also became involved in the investigation. Through their investigation, co-conspirator Jayden Lance Cope was identified. Agents engaged in a series of audio-video recorded controlled purchases from Cope III and J. Cope using a confidential informant and/or undercover agent. During the controlled purchases of firearms, agents purchased at least 11 firearms from Cope III and J. Cope, some of which had previously been reported stolen. An e-trace showed that at least five firearms purchased during the controlled purchases from the Copes were originally purchased by the defendant, and the shortest time-to-crime, the time between the purchase of the firearm by the defendant and the firearm's recovery by law enforcement, was 41 days and 42 days respectively. The firearms purchased by the defendant and sold by the Copes to agents included an Adler 12-gauge shotgun manufactured in Turkey, a Century Arms pistol manufactured in Vermont, a Diamondback Arms pistol manufactured in Daytona Beach and sold in Indiana, and a Ruger pistol manufactured in Arizona.

Defendant's Initials _____BA_____                    2

Throughout the investigation, ATF SAs learned that the defendant sold and advertised dozens of firearms for sale. The defendant proclaimed himself to be an "arms dealer." Further, if potential firearms customers were seeking a specific type of firearm, the defendant would often obtain that firearm for the customer, selling it for a pre-negotiated price. ATF SAs determined that the defendant purchased his firearms from an online firearms dealer based out of Kentucky and/or a pawn shop located at Jacksonville Beach, within the Middle District of Florida. Firearms purchased from the online firearms retailer were shipped to a store in Jacksonville Beach, Florida. Records reflected that the defendant would purchase firearms multiple times a week and often purchased multiple firearms at a time. The defendant purchased at least 121 firearms between March 2022 and June 24, 2024. Of the at least 121 firearms purchased by the defendant, at least 67 were purchased between January 17, 2024, and June 24, 2024.

An ATF SA also obtained a federal search warrant for the defendant's iCloud. The SA identified messages, photos, and videos related to drug trafficking as well as firearms possession, purchases, and sales; sources of income, or lack thereof; and the defendant's habitual drug use, including but not limited to use of cocaine, Adderall, Xanax, and/or psylocibin mushrooms. In the defendant's communications, he consistently sent text messages to

Defendant's Initials _B.H._                     3

potential firearms purchasers advertising firearms that he had for sale. The defendant's communications reflect he would drop off "inventory" at numerous places, including throughout the Middle District of Florida; Miami, Florida; and Savannah, Georgia. He also advertised firearms for trade, offering to trade the firearm in exchange for some buyers providing him drugs, such as Adderall and cocaine. The defendant's photos and communications also reflect that he was in possession of firearms that had large capacity magazines.

Based on firearms purchase records and the defendant's communications, the defendant would often advertise the firearms for sale before he purchased the firearms from a federally licensed firearms dealer, even describing firearms as being "presold." However, when the defendant would fill out ATF form 4473 to buy the firearms, the defendant indicated that he was the actual purchaser/transferee of the firearm. He then certified that his answers were correct. For example, in a specific communication, the defendant advertised a firearm for sale on April 15, 2024. The defendant did not complete ATF Form 4473 at a federally licensed firearms dealer for that firearm until April 17, 2024. When completing ATF Form 4473, the defendant indicated that he was the actual purchaser/transferee of the firearm, that the firearm would not be sold, and that he was not a controlled substance user. All those statements were false and were material to the sale of the firearm.

Defendant's Initials __BA__                    4

The defendant's communications and agents' interviews with witnesses showed that the defendant knew that many of the people he was selling firearms to were drug addicts, meaning they were prohibited from possessing firearms under federal law; drug dealers; or people who intended on reselling the firearms themselves for profit. Furthermore, the defendant would also request that others find buyers for the firearms he was selling and would direct those same people in the distribution of cocaine, Adderall, or other controlled substances.

ATF SAs obtained a federal search warrant for the defendant's Maserati following his arrest for driving under the influence and drug charges in June 2024. During the execution of the search warrant, ATF SAs found two empty rifle boxes, assorted firearms documents, and two firearms owners' manuals. The serial number on one of the rifle boxes corresponded to one of the firearms purchased by ATF/FDLE during the controlled purchases with the Copes.

An ATF SA executed grand jury subpoenas for the defendant's financial records. Those records reflected that the defendant had more than $80,000 in ATM cash deposits into his bank account. In addition, the defendant had approximately $235,037 in total deposits into his account between December 24, 2021, and July 10, 2024. Of that amount, only $23,563 could be traced to legitimate employment related deposits. The defendant's tax records reflect that

Defendant's Initials _RtA_                5

he did not file any taxes for tax years 2020, 2021, and 2023. The defendant filed taxes for tax year 2022, reporting an income of $6585.

Additionally, an ATF SA reviewed certified documents from the ATF Federal Licensing Center, which maintains custody of records pertaining to firearms licenses for people authorized to engage in the business of firearms dealing, manufacturing, importing, or collecting. The records certify that no record or entry was located with respect to the application or issuance of a firearms license to the defendant or known co-conspirators.

Count Five:

On June 26, 2024, officers with JSO responded to assist the Jacksonville Fire and Rescue Department with a possible impaired driver. The defendant was the driver, and he had been passed out behind the wheel of his Maserati in the middle of the roadway. The defendant exhibited numerous indications of impairment. He refused to participate in field sobriety exercises but did consent to a urinalysis. An FDLE analyst tested the defendant's urine sample for the presence of controlled substances. The analyst confirmed the defendant's urine was positive for amphetamine/methamphetamine, cocaine, cocaethylene, alprazolam, alpha-hydrozyalprazolam, diazepam, oxazepam, temazepam, 7-aminoclonazepam, and THC. During a lawful search of the Maserati, officers found a black plastic container under the front passenger seat that contained

Defendant's Initials _BH_                    6

two Ziploc bags with suspected cocaine, a vacuum sealed bag with suspected cocaine, four Ziploc bags with suspected cocaine, a Ziploc green seal with suspected cocaine, and a glass jar with suspected cocaine. Officers also found a black package that contained approximately 17 grams of Adderall. Additionally, a handbag was located with gloves, tape, Ziploc bags, vacuum seal bags, and small clear baggies. Officers also found a large amount of ammunition. An FDLE analyst confirmed the substances were cocaine and had a weight of over 220 grams.

During a review of the defendant's iCloud, an ATF agent observed the defendant had communications where he would discuss selling cocaine, Adderall, psylocibin mushrooms, and Xanax, including negotiating quantities of the drugs and the cost for potential customers to purchase the drugs. Witness statements and communications from the defendant's iCloud indicated that during the course of the conspiracy, the defendant possessed at least 500 grams of cocaine.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials __BH__                              7